IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JEFF EVANSON; LES OESTERREICH; and KAREN O'BRINE, trustees of the Transhumance Employee Stock Plan,<br><br>    Plaintiffs,<br><br>v.<br><br>WILLIAM J. PRICE; MARY ELLEN BREEN, in her capacity as personal representative of the estate and as beneficiary of DENNIS J. BREEN, deceased; and THOMAS WATSON,<br><br>    Defendants. | 2:06-cv-0795-GEB-KJM<br><br><br><br><br><br>ORDER[*] |

Defendants move to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs' claims are barred by the statute of limitations. Plaintiffs oppose the motion arguing, inter alia, that they meet the requirements of the fraud or concealment exception to the statute of limitations. For the following reasons, Defendants' motions will be denied.

///

---

[*] This case was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

BACKGROUND

The original Complaint was filed on April 12, 2005. On June 13, 2006, Plaintiffs filed a Second Amended Complaint in which they assert that Defendants William J. Price ("Price"), Mary Ellen Breen ("Breen")[1] and Thomas Watson ("Watson"), "in their capacities as fiduciaries to the [Transhumance Employee Stock Ownership Plan ("ESOP")] breached their ERISA fiduciary duties of loyalty and prudence to the ESOP to enrich themselves at the expense of the plan and its participants."[2] (Pls.' Second Am. Compl. ¶¶ 85-86.)

The pertinent allegations in the Complaint are as follows. The ESOP is a tax-qualified retirement plan under Internal Revenue Code § 401(a) and an employee stock ownership plan under ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6).[3] ESOP is the sole shareholder of the Transhumance Holding Company, Inc. (the "Company") which owns several subsidiaries in the meat production business. (Id. ¶¶ 3-4.) Defendants were the ESOP's trustees at the time of the events alleged

---

[1] Mary Ellen Breen is being sued in her capacity as the personal representative/administrator/executor of former Trustee and CEO, Dennis J. Breen's estate and as his heir/successor-in-interest/beneficiary. (Pls.' Second Am. Compl. ¶ 15.)

[2] Under the Employee Retirement Income Security Act ("ERISA"), 404(a), 29 U.S.C. § 1104(a), fiduciaries are subject to the "prudent man standard of care" and may be liable for breach of this duty under ERISA 409(a), 29 U.S.C. § 1109(a). Fiduciaries are also subject to co-fiduciary liability under ERISA 405(a), 29 U.S.C. § 1105(a).

[3] ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6) prescribes: "[t]he term 'employee stock ownership plan' means an individual account plan–(A) which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of Title 26, and which is designed to invest primarily in qualifying employer securities, and (B) which meets such other requirements as the Secretary of Treasury may prescribe by regulation."

2

as well as members of ESOP's Administrative Committee and as such were "named fiduciaries" of ESOP under ERISA § 402(a), 29 U.S.C. § 1102(a) and were fiduciaries to ESOP under ERISA § 3(21), 29 U.S.C. § 1002(21).[4] (Id. ¶ 6.) Defendants were also members of Company's Board of Directors and its top officers (Breen was CEO; Price was CFO; and Watson was Procurement Manager/General Manager).[5] (Id. ¶¶ 14-16.)

In 1995, Breen and Price, acting on behalf of the Company, had the ESOP's third-party plan administrator, BSI ESOP/401(k) Consultants & Administrators ("BSI"), design a new compensation plan for the executives. (Id. ¶ 26.) BSI produced a compensation report in October of 1995 that recommended, inter alia, the adoption of an equity appreciation plan called a Value Enhancement Incentive Feature ("VEI Plan") in which Breen, Price and Watson would be the sole participants. (Id. ¶ 29.)

---

[4] ERISA § 402(a), 29 U.S.C. § 1102(a) prescribes: "(a) Named fiduciaries (1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan. (2) For purposes of this subchapter, the term 'named fiduciary' means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." ERISA § 3(21), 29 U.S.C. § 1002(21) provides, in relevant part: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

[5] The Board of Directors was composed of the three Defendants and two non-employees, James Fletcher and Jon Legallet. (Pls.' Second Am. Compl. ¶ 40.)

The VEI Plan was composed of a VEI Pool Participation Right and a Tax Gross-Up Benefit. The VEI Pool Participation Right determined that 30% of the future appreciation in value of Company stock over a four-year period would be contributed to a pool and allocated among Breen, Price and Watson. Upon the expiration of the four-year vesting period, Defendants' VEI Pool Participation Rights would be paid out in shares of Class C Company stock. (Id. ¶ 30.) Under the Tax Gross-Up Benefit plan, the Company would pay Defendants an amount equal to the anticipated federal and state taxes that would be owed on the VEI Pool Participation Right, so that the Defendants' benefits would not be diminished. (Id. ¶ 31.)

In November 1996, the Board of Directors adopted the VEI Plan unanimously; Defendants formally abstained from voting. (Id. ¶¶ 33, 40.) Despite the fact that the Plan was formally adopted in November 1996, the VEI Plan was effective as of May 1, 1995. (Id. ¶ 34.)

Defendants retained an independent trustee, the firm of Watson Wyatt WorldWide ("Watson Wyatt"), to evaluate the fairness of the VEI Plan to the ESOP as a result of their conflict of interest.[6] (Id. ¶ 44.) Watson Wyatt concluded that Defendants' total cash compensation, including their annual salaries and bonuses, but excluding the VEI Plan benefits, exceeded market compensation rates by approximately thirty to fifty percent, varying with each Defendant. When the VEI Plan benefits were considered in addition to the annual

---

[6] "Because of their conflict of interest, the Trustees were required to retain an independent trustee who would evaluate the VEI Plan (presumably with the assistance of an independent financial advisor) and approve of it only upon determining that the VEI Plan was fair to the ESOP." (Pls.' Second Am. Compl. ¶ 42.)

salaries and bonuses, Breen's compensation became more than double that of the market, Price's was two-and-a-third times the market and Watson's was two-and-three quarters times the market. (Id. ¶ 46.) As a result, Watson Wyatt strongly recommended that the Defendants and the Compensation Committee[7] reconsider adopting the VEI Plan and consider modifications that would bring it in line with market rates. Furthermore, Watson Wyatt stated that the compensation package might harm the ESOP and raise issues for ESOP's fiduciaries. (Id. ¶ 47.)

This information was conveyed to Defendants in identical seven-page letters. (Id. ¶ 44.) Breen's letter was dated August 23, 1996; Price and Watson's letters were dated August 26, 1996. (Id.) Defendants concealed the Watson letters by placing them in a file in Breen's office that was inaccessible to others and by keeping secret the existence and contents of the letters. No one other than Defendants and Wyatt Watson had knowledge of these letters. (Id. ¶ 49.) Plaintiff Evanson learned of the letters in 2006 when he discovered them among Breen's files remaining at the Company, and Oesterreich and O'Brine learned of the letters thereafter. (Id. ¶ 50.)

The VEI Plan was amended in 1998, when the Company decided to elect "S" corporation status, which required the Company and ESOP to make changes to the capital structure of the Company and corresponding modifications to the VEI Plan. (Id. ¶ 52.) Under the original VEI Plan, the Pool Participation Rights were to be redeemed by the Company no later than May 1, 1999, in shares of Class C stock which Defendants then had a right to require the Company to

---

[7] The Compensation Committee included Breen, Fletcher and Legallet. (Pls.' Second Am. Compl. ¶ 40.)

repurchase. (Id. ¶ 53.) The Plan was amended in 1998 to, inter alia, re-characterize the VEI Pool Participation Rights as Stock Appreciation Rights ("SARs"), to change the name of the VEI Plan to the Deferred Stock Appreciation Rights Plan (the "SAR Plan"), and to make the SARs redeemable in cash on two redemption dates, the first being October 31, 1998, up to a specified amount in value, the second being March 31, 1999,[8] for the remaining value, as well as to grant the Company the right to defer the second redemption date for up to 10 years. (Id. ¶ 54.)

        The SAR Plan provided that the 1999 redemption value would be calculated "as of" the 1999 redemption date and that this valuation would be prepared by an independent appraiser. (Id. ¶ 56.) The Company commissioned Houlihan, Lokey, Howard & Zukin ("Houlihan"), ESOP's appraiser, to value it as of March 31, 1999, and to prepare a report that would be used to determine the 1999 redemption value. Houlihan's report valued the Company's stock at $31,700,000 as of March 31, 1999. (Id. ¶¶ 57-58.) Defendants were actively involved in inflating this original 1999 valuation of $31,700,000 to a revised valuation of $33,000,000 that Houlihan made on or about October 11, 1999. (Id. ¶¶ 64, 70.) Defendants did this by knowingly furnishing Houlihan with unreliable and/or erroneous financial information and pressuring it into recognizing, in the March 31, 1999 valuation, three years of "tax savings" to the Company, rather than only one year, in connection with the Company's S corporation election. (Id. ¶¶ 64,68.)

---

    [8] This date reflects a subsequent amendment to the SAR Plan. The original amended date was May 1, 1999. (Pls.' Second Am. Compl. ¶ 55.)

6

Finally, in 1999, pursuant to one of the features of the SAR Plan, the Company elected to defer the March 31, 1999 redemption, allowing interest to accrue on the unpaid SARs. Thereafter, Price, as CFO, caused the Company to accrue interest not only on the deferred SARs, but also on the Tax Gross-Up Benefit which amounted to $300,000 to $400,000 in annual interest. (Id. ¶ 76.) This was contrary to the intent of the Tax Gross-Up Benefit which was only designed to ensure that Defendants' payments would not be diminished by taxes and was not designed to provide Defendants with an additional principal benefit. (Id. ¶¶ 76-77.) Price made this decision without consulting anyone. (Id. ¶ 78.) When the Compensation Committee was finally apprised of the situation, it "made a formal determination under the SAR Plan that the interest component was intended to apply only to the SARs and not to the Tax Gross-Up Benefit." (Id. ¶¶ 81). Plaintiff Evanson first learned of these interest accruals in 2004 and Plaintiffs Oesterreich and O'Brine learned of them thereafter. (Id.) Evanson reviewed the original and revised versions of the 1999 valuation and began to discover amounts that appeared to have no financial justification or support. (Id.) Oesterreich and O'Brine only learned of these facts after Evanson did. (Id.)

## DISCUSSION

Dismissal is appropriate under Rule 12(b)(6) if Plaintiffs failed (1) to present a cognizable legal theory, or (2) to plead sufficient facts to support a cognizable legal theory.[9] Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

---

[9] All subsequent references to Rules are to the Federal Rules of Civil Procedure.

When considering a motion to dismiss, all material allegations in the Complaint must be accepted as true and construed in the light most favorable to Plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, Plaintiffs are given the benefit of every reasonable inference that can be drawn from the allegations in their Complaint. Retail Clerks Int'l Ass'n v. Shermahorn, 373 U.S. 746, 753 n.6 (1963). Accordingly, a motion to dismiss must be denied "unless it appears beyond doubt that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

I. The Statute of Limitations

Defendants argue that Plaintiffs' claims are barred by each prong of ERISA's statute of limitations that governs actions for breach of fiduciary duty. (Def. Price's Mot. at 5, Def. Watson's Mot. at 2, Def. Breen's Mot. at 1.)

ERISA's statute of limitations prescribes:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after

|   |   |
|---|---|
| 2 | the date of discovery of such breach or violation. |
| 3 |   |

ERISA § 413(1), 29 U.S.C. §1113.

"To apply the limitations period ... the underlying violation upon which [Plaintiffs'] claim is founded" must be isolated and defined. <u>Meahger v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan</u>, 856 F.2d 1418, 1422 (9th Cir. 1988). Plaintiffs allege a breach of ERISA fiduciary duties. The underlying violation, or "[t]he core of the plaintiffs' breach of fiduciary duty claim" is that Defendants concealed material information; specifically, the Watson Wyatt letters. <u>Cetel v. Kirwan Financial Group, Inc.</u>, 460 F.3d 494, 511 (3rd Cir. 2006). Plaintiffs allege these letters constituted material information because had they been revealed to the Company, the VEI Plan would have been abandoned; Defendants would not have received millions of dollars in compensation; and the ESOP would not have allegedly suffered millions of dollars in losses. (Pls.' Second Am. Compl. ¶ 89.)

### A. The Fraud or Concealment Exception

In cases of fraud or concealment, ERISA § 413(1), 29 U.S.C. § 1113(1) provides for tolling of the statute of limitations until the date of discovery, at which point it begins to run for up to six years. Defendants argue that Plaintiffs are not entitled to this exception. (Def. Price's Mot. at 6, Def. Watson's Mot. at 10, Def. Breen's Mot. at 8.)

A claim falls within the fraud or concealment exception if an ERISA fiduciary either "'misrepresent[s] the significance of facts the beneficiary is aware of (fraud) or ... hid[es] facts so that the

beneficiary never becomes aware of them (concealment).'" <u>Barker v. American Mobil Power Corp.</u>, 64 F.3d 1397, 1401 (9th Cir. 1995), <u>see also</u> <u>DeFazio v. Hollister Employee Share Ownership</u>, 406 F.Supp. 2d 1085, 1094 (E.D.Cal. 2005) (citing <u>Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.</u>, 919 F.2d 1216, 1220 (7th Cir. 1990)). This exception incorporates the common law doctrine of fraudulent concealment, "which tolls the running of a statute of limitations when the defendant has prevented the plaintiff's timely discovery of the wrong she has suffered." <u>Radiology Ctr., S.C.</u>, 919 F.2d at 1221. "The relevant question is therefore not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty." <u>Kurz v. Philadelphia Elec. Co.</u>, 96 F.3d 1544, 1552 (3rd Cir. 1996) (citing <u>Barker</u> 64 F.3d at 1402).

     Plaintiffs allege that Defendants concealed the Watson Wyatt letters in Breen's office and as a consequence, enriched themselves personally with compensation to which they were not entitled, causing the ESOP to suffer millions of dollars in losses. (Pls' Second Am. Compl. ¶¶ 88-89.) The alleged concealment of the Watson Wyatt letters is evidence that Defendants "took affirmative steps to hide [their] breach of fiduciary duty." <u>Kurz</u>, 96 F.3d at 1552. Accordingly, taking Plaintiffs' allegations as true, as required under the Rule 12(b)(6) dismissal standard, Defendants' alleged breaches fall within the fraud or concealment exception of the statute of limitations since Plaintiffs allege that Evanson only first learned of the Watson Wyatt letters in 2006 when he discovered them among Defendant Breen's files

remaining at the Company and that Oesterreich and O'Brine only learned of them thereafter. (Pls.' Second Am. Compl. ¶ 50.)

Defendants further argue that Plaintiffs have not sufficiently pled the elements of fraud or concealment as Rule 9(b) requires. (See Def. Breen's Mot. at 12, Def. Watson's Mot. at 12, Def. Price's Mot. at 7.) Fraudulent concealment is a component of Plaintiffs' ERISA breach of fiduciary duty claim and Rule 9(b) prescribes that "all averments of fraud or mistake, [and] the circumstances constituting fraud or mistake shall be stated with particularity." Pleading is sufficient under Rule 9(b) if it identifies "'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" Gottreich v. San Francisco Investment Corp., 552 F.2d 866, 866 (9th Cir. 1977) (quoting Walling v. Beverly Enter., 476 F.2d 393, 397 (9th Cir. 1973)). Statements of the time, place and nature of the alleged fraudulent activities are sufficient. Wool v. Tandem Computers Inc., 818 F.2d 1433, 1440 (9th Cir. 1987) (citing Semegen v. Weidner, 780 F.2d 727, 735 (9th Cir. 1985); Bosse v. Crowell Collier & Macmillian, 565 F.2d 602, 611 (9th Cir. 1977)). Plaintiffs' claim is sufficiently pled under this standard.

B. The California Decedent Statute of Limitations

Defendant Breen argues that Plaintiffs' claim against her is barred by the California decedent statute of limitations, since Dennis Breen, Defendant Breen's late husband, passed away in July 2004. (Pls.' Second Am. Compl. ¶ 4.) The California decedent statute of limitations requires any claim against a decedent's estate to be brought within one year after the date of death, regardless of any

2 | other statute of limitations, thereby barring all claims against
3 | Defendant Breen as of July 2005.  See Cal. Civ. Proc. Code § 366.2,
4 | Def. Breen's Mot. at 2.
5 |     Plaintiffs counter that their breach of fiduciary duty claim
6 | survives Dennis Breen's death notwithstanding the California decedent
7 | statute of limitations because of ERISA's express pre-emption clause.
8 | (Pls.' Opp'n at 32.)  ERISA's express pre-emption clause states that
9 | ERISA "shall supersede any and all State laws insofar as they may now
10 | or hereafter relate to any employee benefit plan ...." ERISA § 514(a),
11 | 29 U.S.C. § 1144(a).
12 |     The Supreme Court held in Boggs that when a "direct clash
13 | [exists] between state law and the provisions and objectives of ERISA,
14 | the state law cannot stand."  Boggs v. Boggs, 520 U.S. 833, 844
15 | (1997).  "We can begin, and in this case end, the analysis by simply
16 | asking if state law conflicts with the provisions of ERISA or operates
17 | to frustrate its objects."  Id. at 841.  Where this conflict exists,
18 | analysis ends, and inquiry is unnecessary as to "whether the [ERISA]
19 | statutory phrase 'relate to' provides further and additional support
20 | for the pre-emption claim.  Nor need we consider the applicability of
21 | field pre-emption."  Id.  "In enacting ERISA, Congress set out to
22 | protect participants in employee benefit plans by establishing
23 | standards of conduct, responsibility, and obligations for fiduciaries
24 | of employee benefit plans, and by providing for appropriate remedies."
25 | Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715,
26 | 719 (9th Cir. 1997).  The California decedent statute of limitations,
27 | by shortening the time period within which a cause of action can be
28 | brought against an ERISA fiduciary, conflicts with the ERISA statute

of limitations at issue and would operate to limit available remedies under ERISA and thereby frustrate its purpose.  To the extent that California's decedent statute of limitations conflicts with ERISA's statute of limitations, it is pre-empted.  Therefore, Plaintiffs' claim against Defendant Breen is timely.

For the stated reasons, the dismissal motions are denied.

IT IS SO ORDERED.

Dated:  September 29, 2006

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge